**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
mark@potterhandy.com
James M. Treglio (SBN 228077)
jimt@potterhandy.com
Isabel Rose Masanque (SBN 292673)
isabelm@potterhandy.com
100 Pine St., Ste 1250
San Francisco, CA 94111
Phone: (858) 375-7385
Fax: (888) 422-5191

Attorneys for Plaintiff, on behalf of herself and all others similarly situated

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STACY PENNING, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ALBERTSONS COMPANIES, INC., a Delaware Corporation; and DOES 1-100, inclusive,<br><br>Defendants. | Case No: 3:26-cv-04340-JSC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED**<br><br>Hon. Jacqueline Scott Corley |

## I. INTRODUCTION

Defendant's motion mistakes surface-level similarities for the substantial factual overlap and risk of duplicative proceedings that Rule 3-12 requires. It points to the same defendant, privacy statutes, and allegations that tracking technologies operated on Defendant-owned websites. Mot. at 2. Rule 3-12 requires more. The actions must concern substantially the same parties, property, transaction, or event, and separate adjudication must likely cause unduly burdensome duplication or conflicting results. N.D. Cal. Civ. L.R. 3-12(a). Neither requirement is met. Defendant's motion itself recites this conjunctive standard but then relies on the shared defendant, overlapping causes of action, and generalized issues of tracking, consent, and privacy injury. The current Rule confirms that each element is independently necessary, and both must be satisfied.

Defendant calls the different websites the "main difference." Mot. at 2. But that difference is the operative event. *Penning* concerns code executing on Andronico's website during *Penning*'s visit; *Olson* concerns code executing on Safeway's website during *Olson*'s separate visit. The complaints allege materially different tracker configurations and data flows, different alleged post-opt-out tracker behavior, different sessions and injuries, and website-specific classes. And Defendant offers no concrete showing at all that keeping the cases before their assigned judges will create undue duplication or conflicting results. The *Penning* Complaint is directed to andronicos.com, while *Olson* is expressly directed to safeway.com.

## II. ARGUMENT

### A. The Actions Do Not Concern Substantially the Same Parties, Property, Transaction, or Event

One common corporate defendant does not make the parties substantially the same where the named plaintiffs differ, each proposed class is defined by a different website, and Defendant offers no evidence that any class overlap is substantial. The complaints themselves make the website-specific nature of the alleged conduct explicit: tracking scripts execute "within the context of that website" and must be installed for each website that uses them. *Penning Compl*. ¶ 63; *Olson Compl*. ¶ 73. Thus, whether particular trackers intercepted information, what they transmitted, and whether they fired before or despite a user's privacy choice turns on the configuration and operation

of the particular domain during the relevant visit—not on the generic fact that Defendant owns both sites. *Penning* alleges that Andronico's website installs and executes its trackers within the context of that website; *Olson* makes the corresponding allegation as to Safeway.

The pleaded configurations materially differ. *Penning* alleges that Andronico's deployed 111 third-party trackers, 31 cookies, and six canvas fingerprints, and shared data with three major advertising networks. *Penning* Compl. ¶¶ 38–39. *Olson* alleges 195 third-party trackers, 32 cookies, six canvas fingerprints, and five major advertising networks, including Pinterest. *Olson* Compl. ¶¶ 46–47, 62. *Olson* further alleges Meta Advanced Matching, _fbp and _fbc cookies, transmission of a SHA-256 hashed email, and more than 170 module IDs—allegations *Penning* does not make. *Id.* ¶¶ 55–58. The post-opt-out allegations also differ: *Penning* alleges 128 total trackers and 22 cookies; *Olson* alleges 217 trackers and 23 cookies and specifically identifies session recorders and non-cookie scripts. *Penning Compl*. ¶¶ 66–70; *Olson Compl*. ¶¶ 76–80.

The plaintiffs, sessions, and proposed classes are likewise distinct. *Penning* alleges a February 2026 Andronico's visit to browse groceries and prices and an immediate increase in advertising related to products she searched. *Penning* Compl. ¶¶ 89–94. *Olson* alleges an April 2026 Safeway visit to review deals after seeing Safeway advertisements and cross-site tracking through canvas fingerprints. *Olson* Compl. ¶¶ 99–105. Each complaint defines its class by persons who accessed its own defined "Website"—Andronico's in *Penning* and Safeway in *Olson*. *Penning* Compl. ¶¶ 1, 98; *Olson* Compl. ¶¶ 1, 109. Defendant identifies no evidence that any possible overlap between the two website-defined classes is substantial.

*Oliver v. Lyft, Inc.* is closely analogous. There, both putative class actions asserted TCPA claims against Lyft based on allegedly unauthorized text messages and presented consent issues, but the court held that "these parallels do not suffice to meet the substantial similarity threshold." *Oliver v. Lyft, Inc.*, No. 19-cv-01488-WHA, Dkt. No. 22, at 4 (N.D. Cal. Apr. 29, 2019). The court emphasized that the putative classes had different relationships with Lyft, presented different consent inquiries, and arose from different transactions; "[e]ven if there was some overlap between classes, the operative facts for the putative classes would still make them substantially different."

*Id.* at 5. The court therefore concluded that the actions did not concern substantially the same parties, property, transaction, or event and that separate proceedings posed no undue risk of duplication or conflicting results. *Id.*

*Avila v. Ford Motor Co.* reinforces the point. Even 56 cases involving the same defendant, the same transmission, overlapping evidence of Ford's knowledge, and similar consumer claims were not related where they involved different plaintiffs, vehicles, classes, and purchases. *Avila v. Ford Motor Co.*, No. 22-cv-00542-PCP, Dkt. No. 156, at 1–2 (N.D. Cal. Apr. 30, 2026). The overlap Defendant identifies here—same corporate defendant, overlapping statutes, and a general category of website technology—is no stronger.

### B. Defendant Makes No Showing of Unduly Burdensome Duplication or Conflicting Results

Rule 3-12(a)(2) is an independent requirement. Defendant recites it, Mot. at 2, but its merits discussion never identifies any duplicated witness, deposition, technical configuration, data source, or other concrete burden that would become undue if the actions remain separate. Although both actions implicate Article III standing, Defendant does not show that standing will be decided on the same alleged data collection, disclosure, or injury; the named plaintiffs' site-specific allegations differ materially. The Court's August 11, 2026 Order to Show Cause underscores the site- and plaintiff-specific nature of that inquiry. The Order asks whether *Penning*'s own allegations identify what information was collected from her, what advertising allegedly resulted, and a concrete injury arising from her Andronico's visit. *Olson*'s complaint concerns a different Safeway visit and alleges different technologies and data flows, including Meta Advanced Matching, a hashed-email parameter, persistent Meta identifiers, and cross-site fingerprint tracking. Any different standing outcomes would therefore reflect materially different pleaded facts, not conflicting adjudications. Instead, it lists three abstract subjects—statutory liability, consent, and concrete privacy injury. *Id.* Similar legal subjects do not establish Rule 3-12(a)(2). Indeed, after quoting both prongs of Rule 3-12, Defendant's motion proceeds directly to its asserted factual and legal similarities and ends without a separate showing of undue duplication or conflicting results. The governing Rule expressly requires that second showing. The motion does not identify any shared source code,

consent-management configuration, tracker-deployment record, vendor contract, data repository, technical custodian, or corporate policy that would actually be duplicated in the two actions. Similar pleading language, common vendors, and the same causes of action do not establish that the two domains involved the same operative transaction or event.

The pleaded merits will require site-specific proof. Consent depends on what the particular site displayed and what its trackers did before and after a privacy choice. Liability depends on what communications the particular scripts intercepted or transmitted. Injury depends on each plaintiff's alleged session and consequences. *Penning* pleads, among other things, immediate advertising related to products she searched, while *Olson* pleads cross-site and subsequent-visit tracking through canvas fingerprints. *Penning* Compl. ¶ 93; *Olson* Compl. ¶¶ 101–103. Common legal standards can be applied to different facts without producing "conflicting results." Different applications of the same law to different website configurations are not conflicting judgments.

*Oliver* rejected the asserted duplication-and-efficiency rationale as well. Because the actions involved different facts and claims, "the judge in each case would be focused on resolving separate issues of law and fact for different parties," and "[t]he rulings in each case would not interfere with one another." *Oliver*, Dkt. 22 at 5. The court contrasted cases involving not merely overlapping classes, but "overlapping classes" along with "overlapping causes of action and factual inquiries." *Id.* at 5 n.4. *Oliver* also relied on *Ortiz v. CVS Caremark Corp.*, No. C-12-05859 (EDL), 2013 WL 12175002, at *2 (N.D. Cal. Oct. 15, 2013), which held that "the limited overlap of some class members is not enough to reach the 'substantial similarity' threshold." *Id.* at 5. Defendant has shown only ordinary background overlap, not the "unduly burdensome" duplication the Rule requires.

## III. CONCLUSION

Because Defendant has not established either requirement of Civil Local Rule 3-12(a), Plaintiff respectfully requests that the Court deny Defendant's request to relate the *Penning* and *Olson* actions.

Dated: August 17, 2026

**POTTER HANDY, LLP**

By: _/s/ James M. Treglio___________
James M. Treglio
Isabel Rose Masanque
Attorneys for Plaintiff